**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

URIEL PEREZ LOPEZ,

Petitioner,

v.

FERETI SEMAIA, WARDEN/FACILITY ADMINISTRATOR OF ADELANTO ICE PROCESSING CENTER, ET AL.,

Respondents.

Case No. 5:26-cv-06976-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On November 19, 2026, Petitioner Uriel Perez Lopez (A# 213-362-516) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 2-3.) On November 25, 2026, Respondents Fereti Semaia, Warden/Facility Administrator of the Adelanto ICE Processing Center, Thomas Giles, Acting Field

Office Director for Immigration and Customs Enforcement ("ICE"), David Venturella, Acting Director of ICE, Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), and Todd Blanche, Attorney General of the United States (collectively, "Respondents") filed a Response to the Petition (the "Answer"). (Dkt. 10.) The parties have consented to proceed before a U.S. Magistrate Judge for all purposes. (Dkts. 8, 11, 12.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody.**

## II.
## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Dkt. 1 at 16.) Respondents declined to dispute these facts, but did provide a copy of Petitioner's Form I-213 that describes his immigration history, the circumstances of his arrest, and his criminal history. (Dkt. 10 at 6-9.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a 23-year-old citizen of Mexico who has lived in the United States since the age of 17. (Dkt. 1 at 2.) Petitioner entered the United States as a minor accompanied by his parents and as a rider on his father's application for asylum in 2020. (Id.) His derivative asylum application is still pending, after a credible fear determination was made in 2020 at the time Petitioner and his family presented at a port of entry. (Id.) Petitioner, along with his other family members, was released into the United States with a Notice to Appear for immigration proceedings. (Id.) His case has been pending since 2020, and he and his family

have an upcoming individual hearing on February 3, 2027, in Santa Ana, California. (Id.)

Since release, Petitioner has worked, pursuant to an authorization, as a self-employed laborer and has filed taxes accordingly. (Id.) He has married a United States citizen and together they have one child. (Id.) He is the beneficiary of a pending petition for an alien relative (Form I-130). (Id.) Over the past six years, Petitioner has made all required check-ins with ICE and appeared in Immigration Court, with his counsel, as directed. (Id.)

On October 12, 2026, ICE abruptly detained Petitioner. (Id.) ICE did not provide any notice of detention or provide Petitioner an opportunity to report or surrender. (Id.) Instead, Petitioner was forcibly detained and struck with a taser, necessitating medical care at a hospital before he was taken to the detention facility. (Id.) Petitioner has not been provided with a reason for his detention, has not been offered bond, and has not been provided a bond hearing. (Id.) Petitioner is presently detained at the Adelanto ICE Processing Center. (Id.) His wife and child are suffering financially due to the loss of Petitioner's financial support, and emotionally due to the sudden loss of their husband/father in the home. (Id. at 2-3.)

According to Petitioner's Form I-213 submitted by Respondents, ICE detained Petitioner when they were conducted a surveillance operation on an unrelated target. (Dkt. 10 at 7.) ICE officers conducted a vehicle stop on a public road and identified themselves as Police-ICE. (Id.) When Petitioner resisted exiting the vehicle, ICE officers attempted to physically extract him. (Id. at 8.) As part of these efforts, ICE officers discharged a taser probe on Petitioner's back and another to Petitioner's rear beltline area. (Id.) Petitioner was then subdued and taken into custody. (Id.)

The Form I-213 also confirms that Petitioner was first encountered by Customs and Border Protection ("CBP") on March 13, 2020 at the DeConcini Port of Entry in Nogales, Arizona, and processed as an Expedited Removal/Credible

Fear. (Id.) On March 18, 2020, U.S. Citizenship and Immigratoin Services ("USCIS") found that Petitioner had established his persecution claim and issued Petitioner a Form I-862 Notice to Appear. (Id.) On March 25, 2021, Petitioner was re-issued a Form I-862 Notice to Appear. (Id.) On March 30, 2021, Petitioner filed a Change of Venue motion with the Los Angeles Executive Office for Immigratoin Review ("EOIR"). (Id.) On June 26, 2026, The Los Angeles EOIR granted Petitioner's motion for change of venue to the Santa Ana Immigration Court with a scheduled merits hearing on February 3, 2027. (Id.) Petitioner has a U.S. Employment Authorization Card with his name that expires June 7, 2029. (Id.)

The Form I-213 also states that Petitioner was arrested on May 1, 2026 and charged by the Fullerton Police Department with kidnapping, sexual battery by restraint, and lewd acts on a child. (Id. at 9.) Petitioner has provided a Certificate of Release from the Fullerton Police Department showing that he was detained only, and not arrested on May 1, 2026, and that he was released on May 5, 2026, from the charges for which was arrested pursuant to California Penal Code § 849.5. (Dkt. 1-3 at 2.) The Certificate of Release advises that California Penal Code § 849.5 applies when a person is arrested and released and no accusatory pleading is filed charging them with an offense. (Id. at 3.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count One) is that his detention without notice and a pre-deprivation hearing violated his procedural due process rights. (Dkt. 1 at 10-12.) Petitioner's second claim for relief (Count Two) is that his continued detention violates his substantive due process rights because he is not a flight risk or a danger to the community. (Id. at 12.) Petitioner's third claim for relief (Count Three) is that he is entitled to a temporary restraining order. (Id. at 13-15.) Petitioner seeks immediate release from custody as well as an order enjoining

his re-detention unless the Government first establishes, at a pre-deprivation hearing before a neutral adjudicator, that Petitioner is a flight risk or a danger to the community such that re-detention is warranted. (Id. at 15.) Petitioner also seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id. at 16.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth

in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was

sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, it is undisputed that Petitioner entered the United States as a minor accompanied by his parents and as a rider on his father's application for asylum in 2020. (Dkt. 1 at 2.) It is further undisputed that USCIS found that Petitioner had established his persecution claim and released Petitioner into the United States.[1] (Id.; Dkt. 10 at 8.) It is further undisputed that Petitioner's derivative asylum claim is still pending, (Dkt. 1 at 2), and that Petitioner was granted a U.S. Employment Authorization Card that is valid until Jun 7, 2029.[2] (Dkt. 10 at 8.)

Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on his pending asylum application, approved employment authorization, and the fact that immigration authorities released him into the United States. See, e.g., Gagik T. v. Chestnut, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("Judges of this district and others have repeatedly held, on facts materially similar to these, that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained

---

[1] The fact that Petitioner was released into the United States necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

[2] The fact that Petitioner was granted employment authorization necessarily means that Petitioner's asylum application was neither frivolous nor abandoned. See 8 C.F.R. § 208.7.

without pre-deprivation process."); Kharitonova v. Albarran, 2026 WL 531441 at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the length of time he has resided out of custody and built a life for himself in the United States. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Indeed, it is undisputed that Petitioner has worked pursuant to employment authorization as a self-employed laborer, filed his taxes, and supported his U.S. citizen wife and child. (Dkt. 1 at 2.) Petitioner's undisputed ties to the community further strengthen his liberty interest in remaining out of custody. See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is further undisputed that Petitioner was detained by immigration authorities on October 12, 2026, without prior notice, a warrant, or a pre-deprivation hearing. (Dkt. 1 at 2; Dkt. 10 at 7-8.) The Form I-213 describes the arrest as incredibly violent and resulting in ICE officers discharging a taser probe on Petitioner's back and another to Petitioner's rear beltline area. (Dkt. 10 at 7-8.) The Court concludes that Petitioner's re-detention by immigration authorities on October 12, 2026, without prior notice or a pre-deprivation hearing violated Petitioner's procedural due process rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner

is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given this violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The fact that Petitioner could receive a post-deprivation bond hearing and that Respondents have offered such a hearing does not remedy the violation of Petitioner's procedural due process rights. (Dkt. 10 at 2-3); see, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because

it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[3] See, e.g., Baltazar v. Noem, 2026 WL 413527, at *5 (C.D. Cal. Jan. 30, 2026) ("Where courts have found

---

[3] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because it is undisputed that Petitioner has made all required check-ins with ICE and appeared in Immigration Court, with his counsel, as directed. (Dkt. 1 at 2.) Although Petitioner has a recent detention by the Fullerton Police Department on May 1, 2026, it is also undisputed that he was released pursuant to California Penal Code § 849.5, which suggests that no charges were filed. (Dkt. 1-3 at 2-3.) It is also undisputed that Petitioner has no criminal convictions. (Dkt. 10 at 9.) Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

the procedural due process violation examined here, they routinely order release and enjoin Respondents from re-detaining petitioners without providing a pre-detention hearing before a neutral arbiter."); Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Baltazar, 2026 WL 413527; see also Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing

here. Petitioner has suffered an irreparable injury by being detained in violation of his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[4]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the EAJA. (Dkt. 1 at 16.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

---

[4] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Uriel Perez Lopez (A# 213-362-516) ("Petitioner") from custody (subject only to conditions that were in place prior to his October 12, 2026 arrest, if any) and return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: November 25, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE